JOHN W. BRISCOE *v.* JAMES BRISCOE'S ADMR.

**Donatio Mortis Causa.**

According to the well settled doctrine on the subject, to constitute a donatio mortis causa, there must be three attributes:

1. The gift must be with a view of the donor's death. 2. It must be conditioned to take effect only on donor's death by his existing disorder. 3. There must be an actual delivery of the subject of the donation.

**Same—Choses in Action—Pass by Donation.**

Not only negotiable notes, and bills of exchange, payable to bearer, or endorsed in blank, and bank notes, but promissory notes not made payable to "bearer" without an assignment from the payees' donor may be the subject of a donatio mortis causa, as the beneficial interest therein may pass by delivery.

**Same—Gift in Contemplation of Death.**

The delivery of a note to a possible future heir of the donor, who was old and in feeble health, would not amount to a donatio mortis causa, where the gift was accompanied by the statement that it was to take effect if he died, he being at the time very feeble, and believing that he could not live long, and stating that if he did not die, and lived to need it the note could be returned to him. The donor lived for several months afterwards and the pleadings show nothing to intimate that the donor died of the same illness existing at the time of the alleged donation.

APPEAL FROM LOUISVILLE CHANCERY COURT.

May 26, 1868.

OPINION OF THE COURT BY JUDGE PETERS:

This action was brought in the Louisville chancery court by Jacob B. Briscoe, administrator of James Briscoe, deceased, against John W. Briscoe, and James and John Burks, to compel said J. W. Briscoe to surrender to him a note executed on the 26th of May, 1859, for $1,110 to his intestate by said Burks, due twelve months after date, which he alleged had been placed in J. W. Briscoe's hands by his intestate to present to the obligors for payment, and to collect, and he prayed judgment against the Burks for the amount of the same.

John W. Briscoe resisted the plaintiff's claim to the note, denied in his answer that the note was delivered to him by intestate to collect, alleged that intestate was at his death, and had been for many years previous thereto, a widower, and childless, that he was the only child of an only brother of the whole blood, that some two months, or six weeks, before his death gave said note to him, declaring at the time that he was in feeble health, and knew he could not live long, but if he lived to need it, defendant could return it to him, and if he died, the note was to be defendant's; the note was delivered to him, and he accepted it on the terms the same was given to him, and he thereby became the owner of it. That intestate was in fact then in feeble health, expected to live but a short time, and died soon thereafter.

The Burks made no defense to the action; on final hearing the court below rejected J. W. Briscoe's claim to the note, and rendered judgment against the Burks for the amount thereof in favor of the plaintiff, and John W. Briscoe appeals.

It is insisted by the learned counsel for appellant that the transaction by which he was put in possession of the note is invested with all the requisites necessary to entitle him to it as a valid donation mortis causa.

According to the well settled doctrine on the subject, to constitute a *donatio mortis causa,* there must be three attributes: (1) The gift must be with a view to the donor's death. (2) It must be conditioned to take effect only on the donor's death by his existing disorder, or in his existing illness. (3) There must be an actual delivery of the subject of the donation. 1 Story's Equit., sec. 607.

Heretofore it has been doubted whether choses in action, bonds, bills, notes, etc., could pass by a donation *mortis causa.* But it is now the established doctrine that not only negotiable notes, and bills of exchange, payable to bearer, or endorsed in blank, and bank notes, but promissory notes. *not* made payable to *"bearer"* without an assignment from the payee's donor to the donor, may be the subject of a *donatio mortis causa,* as the beneficial interest therein may pass by delivery. Turpin, etc., vs. Thompson, 2 Met., 420; Kemper vs. Kemper, 1 Duv., 401, and authorities cited.

As, therefore, the note may be the subject of such a gift, and an assignment thereof by the holder not indispensable to its accomplishment, and if it be conceded that the possession of it, is,

*prima facie,* evidence of an actual delivery, whereby the last requisite may be regarded as made out. Has appellant failed to show the existence of the others, or either of them. ·

It is alleged in the answer of appellant that the intestate was his uncle, that he delivered the note to him some six weeks, or two months, before his death, declaring at the time that he was in feeble health, and knew he would not live long, and said he gave him the note; if he died, it was to be his (appellant's), but if he lived to need it, it could be returned to him. This is the sub stance and whole meaning of the allegation on the subject of the donation, omitting the reason therefor as stated in the answer.

Admitting that the gift was made in view of the donor's death, according to the allegation, was it to take effect on condition that he died of a disorder then existing, or in his then existing illness? It is not so alleged; but he lived six weeks, or two months, after the alleged gift, and delivery, and from anything that appears in the answer he may have recovered from the feeble health from which he was suffering, and died of another and altogether different disease.

In the two cases before cited, decided by this court, importance was given to the fact that the gifts were made in the last illness of the donors, and in contemplation of death, and which, as stated in the case in 1 Duv., occurred within a few days.

Here intestate lived weeks, and the strong probability is as much as two months, after the delivery of the note to appellant, having ample time and opportunity to dispose of his estate by last will, which according to the evidence he intended to do, and had a writing prepared for his will, but for some unexplained cause never was perfected. And certainly there was ample time and opportunity to have had the delivery of the note, and the terms of its delivery, attested, and published in the most satis-· factory mode. But on the subject of the gift, appellant has introduced but one witness, who was comparatively a stranger to intestate, for he proves, himself, he never had but two conversations with him, in the last of which he states he was hauling wood to intestate, and he sent for him to come into his house, and when he went in, he asked him when he had seen John Briscoe, and then stated to him that he had given John Briscoe a note on the Burks, and also stated that he had had but one child, who was dead, and since that event John Briscoe appeared as near to him as· his own

child, and that was all the conversation that he remembered occurred between them.

This witness does not prove that James Briscoe was then even in feeble health, nor what his condition was at the time he gave the note to appellant; his condition as to health at that time he did not know, as must be presumed, or he would have proved it. Moreover, according to his statement, the gift was absolute and irrevocable, and had more the semblance of a gift *inter vivos,* than a donation *mortis causa.* But in view of the variance between the allegations of the answer of appellant and the proof offered to sustain it, the transaction cannot be considered as possessing legal validity in either character.

Wherefore, the judgment is affirmed.

*Caldwell,* for appellant.

*Bullock & Anderson,* for appellee.