GORDON DEXTER & another, trustees, *vs.* GORDON DEXTER
& others.

Essex.    November 10, 1930. — January 28, 1931.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & FIELD, JJ.

*Trust*, Construction of instrument creating trust. *Devise and Legacy*,
Estate for the life of another. *Capital and Income.*

In her will, a woman gave the residue of her estate to trustees for
the benefit of her husband during his life, with certain remainders,
and authorized the trustees to retain any investment made by her,
and to sell, exchange or partition any of the property of the trust.
Several years after her death, it was determined by this court that
the woman's estate was entitled to income from a portion of the
estate of a certain man during the life of her husband, and such in-
come thereafter was paid to the executor of her will. At a time when
the woman's husband was living, the trustees brought a petition for
instructions as to the disposition of the income received from the
man's estate. *Held*, that
    (1) That income in the hands of the trustees was income of the
trust and was not capital;
    (2) There was nothing in the woman's will to show that she in-
tended that there should be an apportionment of such income as
between her husband, the beneficiary for life of the trust, and the
remaindermen;
    (3) The trustees were instructed that such income should be paid
out as income to the woman's husband.

PETITION for instructions, filed in the Probate Court for
the county of Essex on January 21, 1930, by the trustees
under the will of Annie L. Dexter.

The petition was heard by *White*, J., who found that the
allegations of fact in the petition and answer were true; and
reserved and reported the petition for determination by this
court.

*C. L. Barlow*, stated the case.

*J. G. Palfrey*, for guardian *ad litem*.

*R. H. Curtis*, for Gordon Dexter.

CARROLL, J.  In this petition the trustees under the will
of Mrs. Annie L. Dexter ask to be instructed whether pay-
ments received by them from the estate of Edward Linzee
Amory should be retained as capital of the trust fund

under the will of Annie L. Dexter or should be distributed as income of said trust.

Mrs. Dexter died September 29, 1916. In her will she gave the residue of her estate to the petitioners as trustees for successive life tenants with remainders over. The present life tenant, who is one of the trustees, is the surviving husband of the testatrix. Among the assets of the residuary trust is a right to receive income from a trust created by the will of Edward Linzee Amory who died in 1911. Edward Linzee Amory by his will left the residue of his estate in trust, one third of the net income to be payable to his sister Susan Greene Dexter during her life "and from and after her decease to my nephew Gordon Dexter and to his wife, Annie L. Dexter share and share alike during their respective lives." Upon the death of the first life tenant, in 1924, a question arose as to the disposition of the share of the income which Mrs. Dexter would have received if living. The question came before this court in Loring v. Dexter, 256 Mass. 273, and it was there decided that the testator in the event which had happened made no disposition of the income of the share which would have gone to Mrs. Dexter if she had survived the life tenant, and it was to be distributed as intestate property of Amory during the life of Gordon Dexter, and as Mrs. Dexter was one of Amory's next of kin the court directed that one twelfth of the income of the Amory trust be paid to the executor of the will of Mrs. Dexter. The petitioners are receiving the payments of income from the estate of Amory.

Gordon Dexter individually contends that the payments received are income, and the guardian ad litem contends in his answer that the payments should be invested as capital and the income therefrom distributed as income of the Annie L. Dexter trust fund, or, in the alternative, that the payments should be apportioned as between capital and income. As stated in the brief of the guardian ad litem he "now contends that the payments received from the Amory trustees should be apportioned as between capital and income."

What Mrs. Dexter inherited, which went to her executor, was an interest in a part of the trust fund established by Amory. Because of this equitable interest her estate is entitled to and her executor is receiving the income of this interest on a part of the Amory fund for and during the life of another. By the terms of Mrs. Dexter's will all the residue of her property was given to trustees to pay over the net income to her husband during his life. This inherited estate, as part of the Amory trust, became a part of the principal of her residuary trust, and as this estate for the life of another is principal, the receipts from the Amory trustees are the income coming from it, and as such income belong to Gordon Dexter, who is to receive all the net income of his wife's residuary trust during his life. Had Mrs. Dexter survived, what she would have received from the Amory trust would have been income. By her will she directed the income of her residuary trust to be paid to her husband during his life and after his death to be paid to others. The income now in question from the Amory trust was income and not capital belonging to Mrs. Dexter, and is now income payable to her husband.

The guardian *ad litem,* however, contends that there should be an apportionment between capital and income; that the asset in question is a wasting one; that as the payments to the executor of Mrs. Dexter will cease on the death of her husband an apportionment should be made so as to protect the rights of the remaindermen.

Where an estate, in whole or in part, is of a wasting nature, such as mines, timber lands, leaseholds and unproductive property, it is sometimes directed to be sold or converted, the investment capitalized, and an adjustment made between the life tenant and successive takers. See *Kinmonth* v. *Brigham,* 5 Allen, 270; *Minot* v. *Thompson,* 106 Mass. 583. This doctrine, however, rests upon the presumed intention of the testator. In *Edwards* v. *Edwards,* 183 Mass. 581, the estate comprised unproductive real estate and stocks carried on margin; the trustees were called upon to invest the same in such securities as

by the laws of this Commonwealth savings banks are allowed to invest in. In the course of the opinion at page 583 it was said by Chief Justice Knowlton: the testator " is presumed to have intended that the rights of the life tenant to income should be ascertained on the creation of the fund, as if the fund had come into existence immediately after his death." In that case the language of the will disclosed an intention that the property should be converted and an apportionment made. *Hemenway* v. *Hemenway,* 134 Mass. 446, 452. *Old Colony Trust Co.* v. *Shaw,* 261 Mass. 158. See *Lovering* v. *Minot,* 9 Cush. 151, 157; *New England Trust Co.* v. *Eaton,* 140 Mass. 532, 541; *In re Nicholson,* [1909] 2 Ch. 111.

There is nothing in the will of Mrs. Dexter indicating that she desired her trustees to apportion the estate between the life tenant and remaindermen, or in any way deprive the life tenant of income for the benefit of the more remote beneficiaries. As we interpret the will she intended that her investments should be retained. In the seventh clause of her will she expressly authorized the trustees to retain " any investments made by me " with full authority to sell, exchange or " make partition by deed or by suit of any of the property, whether real or personal, at any time held as part of any trust fund or funds." This provision means that her trustees are given the power to hold the investments made by her or according to their judgment to sell or exchange them. It shows that if any sale were thought wise, it was to be made by her trustees. We think these directions are inconsistent with the contention that the conversion should be made by any one other than her trustees or made for some purpose not disclosed in her will. The investment now under consideration was not made by Mrs. Dexter; but her intention as to the residue of her estate is clear. The plan of the will indicates that the trustees could hold the investments made by her or in their discretion at any time sell or exchange them or any property held as a part of the fund. So far as her intention is expressed, it gives no support to the application of the doctrine of conver-

sion and an apportionment or division between the life tenant and remaindermen. These words should be interpreted as the language of the will in *Old Colony Trust Co.* v. *Shaw,* 261 Mass. 158, 163, giving authority to the trustees " in their discretion to continue as long as they think wise to hold stock in mining companies and any other securities or property of any kind which may be found in my estate at my death " was interpreted. In that case it was said at page 167: " there is no room for the operation of the equitable doctrine that personal property given in general terms in trust to be enjoyed by several persons in succession imports an intent on the part of the testator that the gift should be converted into authorized investments and the income of the property so invested, or retained, be so divided or apportioned between the life beneficiaries and the remaindermen that the corpus of the fund shall be kept intact." *In re Nicholson,* [1909] 2 Ch. 111, 120. As was said in *New England Trust Co.* v. *Eaton,* 140 Mass. 532, at page 541, " The authority given by the will indicated a preference of the life tenant to this extent, which took the case out of the ordinary rule." *Hemenway* v. *Hemenway, supra.*

The authority given the trustees to sell or exchange " any of the property . . . at any time held as part " of the fund gave to them the discretion when, if at all, any investment should be sold. These words indicate that the doctrine of conversion as contended for by the guardian *ad litem* is not applicable. *In re Pitcairn,* [1896] 2 Ch. 199. We are of opinion, therefore, that there are no words in the will of Mrs. Dexter from which it can be inferred that the equitable doctrine of conversion was intended; on the contrary, the language of the instrument reveals a purpose to have the trust administered by her trustees dealing with existing securities and if a change were made it was to be by them acting solely according to their discretion.

*Tickner* v. *Old,* L. R. 18 Eq. 422, and *Porter* v. *Baddeley,* 5 Ch. D. 542, cited by the guardian, have not been followed in the more recent cases of *In re Nicholson, supra,*

and *In re Pitcairn, supra.* The other cases relied on by the guardian are to be distinguished.

The trustees are instructed that the payments from the Amory trust are to be paid out as income. Costs as between solicitor and client are to be in the discretion of the Probate Court.

*Ordered accordingly.*